UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
SOUTHEASTERN DIVISION

REBECCA HOVIS,                          )
                                        )
            Plaintiff,                  )
                                        )
      v.                                )      No. 1:15 CV 73 JMB
                                        )
CAROLYN COLVIN,                         )
Acting Commissioner of Social Security, )
                                        )
            Defendant.                  )

**MEMORANDUM AND ORDER**

This action is before the Court, pursuant to the Social Security Act ("the Act"), 42

U.S.C. §§ 401, *et seq.,* authorizing judicial review of the final decision of the Commissioner of

Social Security (the "Commissioner") denying Plaintiff Rebecca Hovis' Title II application for

Disability Insurance Benefits ("DIB"). All matters are pending before the undersigned United

States Magistrate Judge with consent of the parties, pursuant to 28 U.S.C. § 636(c). The

matter is fully briefed, and for the reasons discussed below, the Commissioner's decision is

affirmed.

## I.    Procedural History & Summary of Memorandum Decision

Sometime between 2002 and 2005, the exact date being unknown,[1] Plaintiff filed an

application for DIB benefits under Title II. (Tr. 11, 26, 38-39) That application was denied by

an Administrative Law Judge ("ALJ") on June 28, 2007, and the denial was affirmed by the

Appeals Council on April 11, 2009. (Id.) On August 1, 2012, Plaintiff re-filed her application

alleging diabetes, diabetic neuropathy, heart palpitations, anxiety, seizure disorder, sleep apnea,

---

[1] The file from this prior application was destroyed. (Tr. 11) References to "Tr." are to the administrative
record filed by the Commissioner in this matter.

and a ruptured disc as her disabling impairments. (Tr. 11, 26, 38-39, 52) Plaintiff alleges a disability onset date of November 8, 2005; her date of last insured for DIB purposes is June 30, 2007. Plaintiff's application was denied at the initial level and by an ALJ at the hearing level. (Tr. 8-16) The Social Security Administration Appeals Council denied Plaintiff's request for review, leaving the ALJ's decision as the final decision of the Commissioner in this matter. Plaintiff filed the instant action on April 30, 2015. Accordingly, Plaintiff has exhausted her administrative remedies and the matter is properly before this Court. Plaintiff has been represented by counsel throughout all relevant proceedings.

The ALJ concluded that Plaintiff had not met her burden of demonstrating that she suffered from a severe impairment. (Tr. 14) Accordingly, the ALJ held that Plaintiff was not under any disability during the relevant time period - November 8, 2005, her alleged onset date, to June 30, 2007, her date last insured. (Tr. 16)

In her brief to this Court, Plaintiff nominally raises two issues, although these issues require the Court to consider several subsidiary matters. First, Plaintiff argues that the ALJ erred in concluding that none of her impairments were "severe" at step two of the sequential evaluation process. [ECF No. 12 at 7-12] Second, Plaintiff argues that the ALJ erred in discounting her credibility in evaluating her pain and subjective complaints. (Id. at 12-15) The Commissioner filed a detailed brief in opposition. [ECF No. 15]

As explained below, the Court has considered the entire record in this matter. Because the decision of the Commissioner is supported by substantial evidence, it will be affirmed. The undersigned will first summarize the decision of the ALJ and the administrative record. Next, the undersigned will address each of the issues Plaintiff raises in this Court.

## II.    Decision of the ALJ

In a decision dated November 20, 2013, the ALJ determined that Plaintiff was not disabled under the Social Security Act.  (Tr. 11-16)  The ALJ acknowledged that the administrative framework required him to follow a five-step, sequential process in evaluating Plaintiff's claim.  (Tr. 12-13)  At step one, the ALJ concluded that Plaintiff had not engaged in any substantial gainful activity from November 8, 2005 (her alleged disability onset date), to June 30, 2007 (the date on which Plaintiff last met the insured status requirements of the Act).  (Tr. 13)  At step two, the ALJ found Plaintiff had the following determinable impairments during the relevant time period:  diabetes, degenerative disc disease, and obesity.  (Id.)  The ALJ further concluded, however, that none of Plaintiff's impairments, either singly or in combination, "significantly limited her ability to perform basic work-related activities for 12 consecutive months; therefore, [Plaintiff] did not have a severe impairment or combination of impairments."  (Tr. 14)  Accordingly, the ALJ terminated the sequential evaluation process at step two, finding Plaintiff not disabled.  (Tr. 16)

In making his determination, the ALJ declined to consider evidence regarding Plaintiff's condition after her date last insured.[2]  (Tr. 11)  The ALJ also made an adverse credibility finding regarding Plaintiff's "statements concerning the intensity, persistence and limiting effects of [her] symptoms."  (Tr. 15)  In short, the ALJ concluded that Plaintiff failed to support her claim with sufficient, relevant evidence.  The ALJ summarized his conclusions as follows:

> In terms of [Plaintiff's] alleged impairments, the only medically determinable impairments that are established by the medical records prior to the date last insured where polycystic ovarian syndrome, alleged right hip pain and some

---

[2] The ALJ explained that –

the Agency has no jurisdiction over the period between July 1, 2007 and the date of this decision, because there was no Title XVI claim pending, and [Plaintiff] is not insured under Title II of the Act from July 1, 2007 forward.  Accordingly, exhibits B-2F through B-9F are irrelevant to the present determination of disability.

(Tr. 11)

gastrointestinal symptoms to include cramping and diarrhea. [Plaintiff] was given no restrictions and was treated effectively with hydrations and medications. The clinic visits were intermittent and spread over a long period of time. The [Plaintiff's] entire alleged period of disability was 20 months in duration, and in that period there was a total of five clinic visits … no hospitalizations and no visits to emergency departments…. The examination in December 2006 revealed no tenderness in the low back, and [Plaintiff] complained only of intermittent pain at a point on the posterior iliac crest .... The evidence in [the treatment records from the relevant time frame] contain[] no opinion statements or any function by function analysis of residual work capacity.

(Tr. 15) The ALJ further noted that, although the evidence after Plaintiff's last date insured showed an increase in her pain, gastrointestinal discomfort, seizure activity, and migraine headaches, such evidence was not relevant to Plaintiff's claim. (Id.)

## III.   Administrative Record

The administrative record in this matter and includes extensive medical records. The Court has reviewed the entire record, including the evidence covering the relevant time period. The following is a summary of pertinent portions of the record.

### A.   The Hearing Before the ALJ

The ALJ conducted a hearing on November 12, 2013. Plaintiff was present and represented by an attorney. Also present was a vocational expert ("VE"), Darrell W. Taylor, Ph.D. At the outset of the hearing, the ALJ and Plaintiff's attorney noted that the matter appeared to be a "step five case." (Tr. 25) Also, Plaintiff's attorney confirmed that Plaintiff's date of last insured was June 30, 2007. (Id.) Plaintiff s attorney acknowledged that the only medical records in the administrative record that go "back anywhere close to prior to the date last insured" were the treatment records from Cape Physician Associates, dated January 19, 2005, to October 8, 2007. (Tr. 32, 242-51)

Although the VE testified at the hearing, the ALJ ultimately found Plaintiff not disabled at step two. No party has identified any aspect of the VE's testimony as being relevant to any of

the issues in the present matter. Accordingly, only Plaintiff's testimony is summarized herein.

Plaintiff testified primarily in response to questions posed by her attorney, with additional questions interjected by the ALJ. At the time of her hearing, Plaintiff was thirty-nine years old. (Tr. 26) Plaintiff last worked in 2002 as a phlebotomist for a hospital in Cape Girardeau, Missouri. Plaintiff lost her job due to absenteeism allegedly caused by a seizure disorder. (Tr. 27) According to Plaintiff, in July 2001, she began to suffer from a seizure disorder that resulted in the loss of her driver's license and the ability to travel to and from work. (Tr. 27-28) Plaintiff testified that she has not worked since she lost her phlebotomist job in 2002. When asked to identify the biggest problems that prevented her from returning to work, Plaintiff listed her limited driving ability, her back issues, anxiety, and depression. (Tr. 28)

Plaintiff indicated that between 2002 and 2005, her currently alleged disability onset date, she had a prior disability claim pending. That claim was denied in or around 2008. (Tr. 26) Plaintiff explained that she did not apply for benefits again until 2012 because she had "just given up." (Tr. 26-27)

Plaintiff testified that, although she was taking medications, she still experienced seizures in 2005, 2006, and 2007. (Tr. 29) Plaintiff described her seizures during that time period as being "non-convulsive," and that she would have a "staring spell." (Id.) Plaintiff claimed that she had at least four or five such seizures per month. (Id.) Plaintiff also testified that she experienced migraine headaches related to her seizures during the same time frame. (Tr. 30) Plaintiff reported that the migraine headaches would follow the seizure and last from a short period to the rest of the day in duration. (Tr. 31) Plaintiff testified that sometimes medication helped her with the migraine headaches and sometimes it did not help her. (Id.)

Plaintiff also testified that, since 1997, she has experienced hip and lower back pain. Plaintiff stated that she originally injured her back at work, and that "it just has progressively

gotten worse over the years." (Tr. 31) During the 2005-2007 timeframe, Plaintiff indicated that she was on pain medication and received injections for her back pain. According to Plaintiff, her treatment only helped her for short periods of time. (Tr. 32-33)

Plaintiff was also asked about her weight. She indicated that her weight fluctuated a lot. (Tr. 35) The ALJ asked Plaintiff about a doctor's report that she was walking one and a half miles, three times weekly, riding a bike, and working out on a treadmill. Plaintiff claimed that she only tried to do those activities and was not actually able to do so. (Id.)

Plaintiff also described problems with controlling her blood sugar, and that she was diagnosed with diabetes in December 2005. (Tr. 36)

Plaintiff further testified that she was diagnosed with various stomach-related conditions, including irritable bowel syndrome and gastroesophageal reflux disease ("GERD"). According to Plaintiff, she had her gallbladder removed in 1996, and her stomach issues started in 1997. Plaintiff acknowledged that, despite the onset of her stomach problems, she was able to continue working as a phlebotomist. After Plaintiff stopped working, her stomach problems were better at times and worse at times. (Tr. 37) Plaintiff related, however, that her stomach problems resulted in her needing to use the restroom six to eight times on an average day, and up to fifteen times on her worst days. (Tr. 38)

Plaintiff reported that she has suffered from hypertension and heart palpitations since around 2000 and that her symptoms could occur daily, sometimes lasting for fifteen to twenty minutes. Plaintiff stated that she could control her palpitations by holding ice chips in her mouth, but in severe cases, her husband took her to the hospital. (Tr. 40-41)

Plaintiff also received treatment for ovarian cysts. According to Plaintiff, she has suffered from this condition since she was a young adult. (Tr. 41)

Plaintiff described her daily activities and limitations during the 2005-2007 timeframe.

She reported that she could not lift anything over twenty pounds, but was able to do some

household work, including cooking and cleaning, and she was able to go shopping. Plaintiff

indicated, however, that she had some difficulty performing her household chores and sometimes

her husband handled shopping and other household duties. (Tr. 34) Plaintiff indicated that she

could make her own bed, dress herself, and do some light cooking, but she also had to sit down

frequently. Plaintiff stated that she would spend two or three hours to clean a room, because she

had to sit down frequently. Plaintiff was able to take care of most of her basic hygiene matters.

Plaintiff also occupied her time by watching television and reading. (Tr. 41-44) Plaintiff

testified that she was most comfortable reclined, with her feet elevated and that walking or

standing too long caused her legs to swell. (Tr. 43-44)

**B. Forms Completed by Plaintiff**

In her Disability Report - Appeal, Plaintiff reported that she is not able to drive "due to

the side effects of my medications nor do I have a drivers [sic] license, I do not feel safe being a

driver of a licensed vehicle." (Tr. 227)

**IV. Medical Records and Source Opinion Evidence**

**A. General History**

The medical evidence in the record shows that Plaintiff has a history of diverticulitis,

hypertension, diabetes mellitus, seizures, hip pain, obesity, back pain, gastroesophageal reflux

disease, and polycystic ovarian syndrome.[3] (Tr. 242-358) Although the Court has carefully

considered all of the evidence in the administrative record in determining whether the

Commissioner's adverse decision is supported by substantial evidence, only the medical records

relevant to the ALJ's decision and the issues raised by Plaintiff on this appeal are discussed. See

---

[3] Although the objective medical records clearly show Plaintiff was receiving treatment for polycystic ovarian syndrome during the relevant time frame, Plaintiff did not offer at the hearing or argue to this Court that her polycystic ovarian syndrome was a basis for disability.

also 42 U.S.C. §§ 416(1) and 423(c); 20 C.F.R. § 404.131; Pyland v. Apfel, 149 F.3d 873, 876 (8th Cir. 1998); ("In order to receive disability insurance benefits, an applicant must establish that she was disabled before the expiration of her insured status.").

### B.  Care Physician Associates - Dr. Robert Dodson (Tr. 242-51)

Between January 19, 2005, and October 8, 2007, Dr. Robert Dodson treated Plaintiff for gastrointestinal symptoms, headaches, and leg pain.  (Tr. 242-51)

On January 19, 2005, Plaintiff received follow-up treatment for her gastrointestinal symptoms and intermittent headaches.  (Tr. 251)  A physical examination showed Plaintiff to be obese with no acute distress.  Dr. Dodson found Plaintiff to have metabolic syndrome, reactive airway disease, IBS/GERD, hypertension, and elevated transaminases, and treated Plaintiff by prescribing a medication regimen.  (Id.)  In a January 20, 2005, consultation regarding Plaintiff's abnormal lab results, Dr. Dodson indicated that Plaintiff's obesity might limit a pelvic ultrasound but he would consider a CT scan of her abdomen and pelvis.  (Tr. 250)

On May 11, 2005, Plaintiff returned for treatment, and Dr. Dodson noted that her scheduled appointment had been two months earlier.  (Tr. 250)  Plaintiff reported her main complaint was an increased frequency of headaches.  (Id.)  Dr. Dodson performed a CT scan of Plaintiff's abdomen and pelvis to further evaluate her ovarian and adrenal tumors.  (Tr. 249)

Dr. Dodson reviewed the CT studies with Plaintiff on June 8, 2005.  Plaintiff reported "a significant decrease in the frequency and intensity of her headaches and [was] very pleased with this med[ication]" Topamax.  (Tr. 249)  Dr. Dodson noted that Plaintiff's migraine headaches had a good response on Topamax and increased her dosage.  (Tr. 248-49)  Dr. Dodson diagnosed Plaintiff with elevated transminases, hypertension with palpitations, migraine headaches, and obesity.  (Id.)

In the routine follow-up visit on November 4, 2005, Plaintiff reported she had been

"walking 1.5 miles three times per week with a friend" and "walking like crazy." (Tr. 248)

On June 20, 2006, Plaintiff reported that she had continued with her walking regimen until she started experiencing recent, sudden right leg swelling and pain. (Tr. 247) Dr. Dodson counseled Plaintiff to diet and exercise and found her migraine headaches to be stable. (Id.) Plaintiff sought treatment on October 17, 2006, for upper respiratory symptoms. (Tr. 246) Dr. Dodson noted Plaintiff had acute pharyngitis and prescribed Amoxicillin as treatment.

On December 19, 2006, Plaintiff reported that she had tried to make some diet and exercise changes but her low back and right hip discomfort limited her walking exercise. (Id.) Dr. Dodson encouraged Plaintiff to diet and exercise, and Plaintiff indicated that she was considering using a treadmill or a stationary bike so that she could exercise during the winter months. (Tr. 245)

On October 4, 2007, Plaintiff received follow-up after treatment in the emergency room for symptoms of gastroenteritis.[4] (Tr. 244) Dr. Dodson ruled out significant intra-abdominal process based on the CT scan and lab results and consistent with slowly resolving gastroenteritis especially given the household contact. Dr. Dodson found the CT scan and lab results were "reassuring." (Id.) Plaintiff returned complaining of persistent nausea, vomiting, and diarrhea. (Tr. 243) Based on the ultrasound results, Dr. Dodson ruled out biliary disease and bacterial enterocolitis. Dr. Dodson administered a NS 1 L IV, and Plaintiff "noted a significant symptomatic improvement." (Id.)

The relevant medical evidence will be discussed in more detail below, as part of the Court's analysis of the arguments raised by Plaintiff herein.

---

[4] The record is devoid of any emergency room treatment notes showing treatment for symptoms of gastroenteritis.

## V.    Standard of Review and Analytical  Framework

In a disability insurance benefits ("DIB") case, the burden is on the claimant to prove that he or she has a disability.  See Pearsall v. Massanari, 274 F.3d 1211, 1217 (8th Cir. 2001). Under the Act, a disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. §§ 423(d)(l)(A) and 1382c (a)(3)(A).  A plaintiff will be found to have a disability "only if [her] physical or mental impairment or impairments are of such severity that [she] is not only unable to do [her] previous work but cannot, considering [her] age, education and work experience, engage in any other kind of substantial gainful work which exists in the national economy."  42 U.S.C. § 423(d)(2)(A) and 1382c(a)(3)(B).  See also Bowen v. Yuckert, 482 U.S. 137, 140 (1987).

Per regulations promulgated by the Commissioner, the ALJ follows a five-step process in determining whether a claimant is disabled.  "During this process the ALJ must determine:  1) whether the claimant is currently employed; 2) whether the claimant is severely impaired; 3) whether the impairment is, or is comparable to, a listed impairment; 4) whether the claimant can perform past relevant work; and if not 5) whether the claimant can perform any other kind of work."  Andrews v. Colvin, 791 F.3d 923, 928 (8th Cir. 2015) (citation and quotation omitted). "If, at any point in the five-step process the claimant fails to meet the criteria, the claimant is determined not to be disabled and the process ends."  Id. (citing Goff v. Barnhart, 421 F.3d 785, 790 (8th Cir. 2005)).  See also Martise v. Astrue, 641 F.3d 909, 921 (8th Cir. 2011).

The Eighth Circuit has repeatedly emphasized that a district court's review of an ALJ's disability determination is intended to be narrow and that courts should "defer heavily to the findings and conclusions of the Social Security Administration."  Hurd v. Astrue, 621 F.3d

734,738 (8th Cir. 2010) (quoting Howard v. Massanari, 255 F.3d 577, 581 (8th Cir. 2001)).  The

ALJ's findings should be affirmed if they are supported by "substantial evidence on the record as

a whole."  See Finch v. Astrue, 547 F.3d 933, 935 (8th Cir. 2008).  Substantial evidence is "less

than a preponderance, but enough that a reasonable mind might accept it as adequate to support a

decision."  Juszczyk v. Astrue , 542 F.3d 626, 631 (8th Cir. 2008); see also Wildman v. Astrue,

964 F.3d 959, 965 (8th Cir. 2010) (same).

Despite this deferential stance, a district court's review must be "more than an

examination of the record for the existence of substantial evidence in support of the

Commissioner's decision."  Beckley v. Apfel, 152 F.3d 1056, 1059 (8th Cir. 1998).  The district

court must "also take into account whatever in the record fairly detracts from that decision."  Id.

Specifically, in reviewing the Commissioner's decision, a district court is required to examine

the entire administrative record and consider:

1.      The credibility findings made by the ALJ.

2.      The claimant's vocational factors.

3.      The medical evidence from treating and consulting physicians.

4.      The claimant's subjective complaints relating to exertional and
        non-exertional activities and impairments.

5.      Any corroboration by third parties of the claimant's impairments.

6.      The testimony of vocational experts, when required, which is based upon a
        proper hypothetical question which sets forth the claimant's impairment.

Stewart v. Sec'y of Health & Human Servs., 957 F.2d 581, 585-86 (8th Cir. 1992) (citation

omitted).

Finally, a reviewing court should not disturb the ALJ's decision unless it falls outside the

available "zone of choice" defined by the evidence of record.  Buckner v. Astrue, 646 F.3d 549,

556 (8th Cir. 2011).  A decision does not fall outside that zone simply because the reviewing

court might have reached a different conclusion had it been the finder of fact in the first instance. Id.; see also McNamara v. Astrue, 590 F.3d 607, 610 (8th Cir. 2010) (explaining that if substantial evidence supports the Commissioner's decision, the court "may not reverse, even if inconsistent conclusions may be drawn from the evidence, and [the court] may have reached a different outcome").

## VI.    Analysis of Issues Presented

In her brief, Plaintiff contends that the ALJ committed reversible error when: (1) the ALJ assessed Plaintiff's credibility and ignored third-party statements; and (2) the ALJ found none of Plaintiff's impairments to be severe. As explained below, the Court finds substantial evidence in the record as a whole supports the ALJ's decision that Plaintiff is not disabled within the meaning of the Act.

### A.    Credibility Determination

The Court first addresses the ALJ's adverse credibility determination. An evaluation of Plaintiff's credibility is necessary to a full consideration of the ALJ's conclusion that none of Plaintiff's impairments amounted to a severe impairment. The Eighth Circuit has instructed that the ALJ is to consider the credibility of a plaintiff's subjective complaints in light of the factors set forth in Polaski v. Heckler, 739 F.2d 1320, 1322 (8th Cir. 1984). See also 20 C.F.R. §§ 404.1529, 416 .929. The factors identified in Polaski include: a plaintiff's daily activities; the location, duration, frequency, and intensity of her symptoms; any precipitating and aggravating factors; the type, dosage, effectiveness, and side effects of her medication; treatment and measures other than medication she has received; and any other factors concerning her impairment-related limitations. See Polaski, 739 F.2d at 1322; 20 C.F.R. §§ 404.152, 416 .929. An ALJ is not, however, required to discuss each Polaski factor and how it relates to a plaintiff's credibility. See Partee v. Astrue , 638 F.3d at 860, 865 (8th Cir. 2011) (stating that "[t]he ALJ is

not required to discuss methodically each Polaski consideration , so long as he acknowledged and examined those considerations before discounting a [plaintiff's] subjective complaints") (internal quotation and citation omitted); Samons v. Astrue, 497 F.3d 813, 820 (8th Cir. 2007) (stating that "we have not required the ALJ's decision to include a discussion of how every Polaski factor relates to the [plaintiff's] credibility").

This Court reviews the ALJ's credibility determination with deference and may not substitute its own judgment for that of the ALJ. "The ALJ is in a better position to evaluate credibility, and therefore we defer to her determinations as they are supported by sufficient reasons and substantial evidence on the record as a whole." Andrews, 791 F.3d at 929 (citing Cox v. Barnhart, 471 F.3d 902, 907 (8th Cir. 2006)). See also Gregg v. Barnhart, 354 F.3d 710, 713 (8th Cir. 2003) (holding that "[i]f an ALJ explicitly discredits the [plaintiff's] testimony and gives good reasons for doing so, [the reviewing court] will normally defer to the ALJ's credibility determination"); Pearsall, 274 F.3d at 1218. In this case, the ALJ gave good reasons for discounting Plaintiff's credibility. Accordingly, the Court will defer to the ALJ in this regard.

Plaintiff contends that the ALJ failed to perform a proper credibility analysis because the ALJ failed to give sufficient reasons for the adverse credibility finding. Although the ALJ did not specifically mention Polaski by name, he listed each of the factors. It is clear that the ALJ's decision did, in fact, comply with the Polaski rubric. As explained below, the ALJ's adverse credibility determination is well-supported and justified. Upon a review of the entire record, the Court concludes that the ALJ gave good reasons for the credibility determination and that determination is supported by substantial evidence.

In this case, the ALJ concluded that Plaintiff's "statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely credible...," and noted that he

must consider the factors listed in addition to the objective medical evidence, when assessing Plaintiff's credibility. (Tr. 14-15) In evaluating Plaintiff's credibility, the ALJ determined that Plaintiff was not fully credible because the objective medical record is inconsistent with her allegations of the severity of her impairments.[5]

One reason given by the ALJ focused on the inconsistencies between Plaintiff's treatment history and the alleged severity of her impairments. The ALJ noted that Plaintiff's treatment history is inconsistent with her allegations of the severity of her impairments inasmuch as the record shows "only a handful of clinic visits between November 2005 and June 2007." (Tr. 15) The few treatment records that exist do not indicate a worsening of Plaintiff's conditions. See Turpin v. Colvin, 750 F.3d 989, 994 (8th Cir. 2014) (affirming adverse credibility determination based in part on medical records showing improvement in claimant's condition and lack of ongoing treatment). In assessing the credibility of Plaintiff's complaints regarding the severity of her symptoms, the ALJ considered that Plaintiff did not receive regular treatment for her alleged impairments. A failure to seek regular treatment provides a fair reason for an ALJ to discount a claimant's credibility. See Casey v. Astrue, 503 F.3d 687, 693 (8th Cir. 2007).

The lack of supporting objective medical evidence to corroborate Plaintiff's subjective complaints is also an important factor an ALJ should consider when evaluating those complaints. See Barrett v. Shalala, 38 F.3d 1019, 1022 (8th Cir. 1994) (the ALJ was entitled to find that the absence of an objective medical basis to support claimant's subjective complaints was an important factor in evaluating the credibility of her testimony and of her complaints).

The ALJ's decision shows that he explicitly considered the instant record, including Plaintiff's limited treatment record. In so doing, the ALJ articulated the inconsistencies between the record and Plaintiff's subjective statements.

---

[5] Although not specifically cited by the ALJ, one of Plaintiff's treatment records after her last date insured contradicts her sworn testimony that she has functional limitations. (Compare Tr. 34 and Tr. 345)

The ALJ also discussed how Plaintiff's hearing testimony was inconsistent with, and in some instances contradicted by, the objective treatment records. In her hearing testimony, Plaintiff testified that she had seizures, low back pain, migraine headaches, and GERD. The ALJ noted that although Plaintiff testified about having severe low back pain and seizures, the medical record was devoid of any treatment notes or opinion statements to confirm her pain or seizure complaints prior to the date of last insured. Regarding Plaintiff GERD, the ALJ noted that, during the relevant time period, the medical record showed Plaintiff had been successfully treated by Dr. Dodson. Thus, the medical record during the relevant time period would not corroborate the severity and frequency of symptoms as reported by Plaintiff. Dr. Dodson's treatment notes indicated that Plaintiff's headaches were effectively treated with medication, namely Topamax. (Tr. 249)

Further, the ALJ noted that Plaintiff "testified to gastroesophageal reflux disease with severe cramping, diarrhea and irritable bowel. However, the evidence reflected only a handful of clinic visits between November 2005 and June 2007, and no hospital stays for bowel function or pain issues during that time." (Tr. 15) The ALJ noted that "the only medically determinable impairments that are established by the medical records prior to the date of last insured were polycystic ovarian syndrome, alleged right hip pain and some gastrointestinal symptoms to include cramping and diarrhea. The [Plaintiff] was given no restrictions and was treated effectively with hydrations [sic] and medications."[6] (Id.) As noted by the ALJ, during treatment

---

[6] The undersigned notes that the ALJ failed to list headaches as a medically determinable impairment. The treatment notes show Plaintiff received medical treatment for headaches prior to the date of last insured. On June 20, 2006, Dr. Dodson found Plaintiff's migraine headaches to be stable. To the extent the ALJ erred, the undersigned finds reversal and remand are not appropriate due to this error given that Dr. Dodson found Plaintiff's headaches to be stabilized by a medication regimen. Moreover, the record does not reflect that this error affected the outcome of Plaintiff's case. Welch v. Colvin, 765 F.3d 926, 929 (8th Cir. 2014) (ALJ's failure to explicitly address the applicable regulation was an arguable deficiency in opinion writing that had no practical effect on decision because the ALJ found Plaintiff s limitations had no more than slight impact on Plaintiff's ability to perform full range of sedentary work); Brown v. Chater, 87 F.3d 963, 966 (8th Cir. 1996) ("An arguable deficiency in opinion-writing technique is not a sufficient reason for setting aside an administrative finding where the deficiency

with Dr. Dodson, Plaintiff made no complaints of seizures or low back pain. Likewise, Plaintiff did not testify that she was ever denied medical treatment because of an inability to pay for such. See Goff, 421 F.3d at 792 (failure to take medication was relevant to credibility determination given lack of any evidence that failure was attributable to lack of finances).

Additionally, at the hearing, the ALJ asked Plaintiff about a doctor's report that she was walking one and a half miles, three times weekly, riding a bike, and working out on a treadmill. Plaintiff claimed that she only tried to do those activities and was not actually able to do so. (Tr. 35) Her hearing testimony is refuted by the November 4, 2005, treatment note wherein Plaintiff reported she had been "walking 1.5 miles three times per week with a friend" and the June 20, 2006, treatment note when Plaintiff reported that she had continued with her walking regimen until she started experiencing her recent, sudden right leg swelling and pain. (Tr. 247-48) There are no medical records during the relevant time period supporting Plaintiff's testimony.

These inconsistencies between Plaintiff's sworn testimony and the objective medical evidence are significant. The ALJ was justified in discrediting Plaintiff's credibility in this regard. See Ply v. Massanari, 251 F.3d 777, 779 (8th Cir. 2001) (noting a claimant's inconsistent statements as a factor to consider in determining claimant's credibility); Johnson v. Apfel, 240 F.3d 1145, 1148 (8th Cir. 2001) ("Acts which are inconsistent with a claimant's assertion of disability reflect negatively upon that claimant's credibility."); Van Vickie v. Astrue, 539 F.3d 825, 828 (8th Cir. 2008) ("An ALJ may discount a claimant's subjective complaints if there are inconsistencies in the record as a whole."); see also McCoy v. Astrue, 648 F.3d 605, 614 (8th Cir. 2011) (inconsistencies in record detract from a claimant's credibility). For example,

---

probably has no practical effect on the outcome of the case."). While the ALJ should have included Plaintiff's headaches as a medically determinable impairment, his failure to do so was not error, as this impairment did not require any additional limitations. Senne v. Apfel, 198 F.3d 1065, 1067 (8th Cir. 1999) ("We have consistently held that a deficiency in opinion-writing is not a sufficient reason for setting aside an administrative finding where the deficiency had no practical effect on the outcome of the case.").

Plaintiff's hearing testimony regarding her husband taking her to the hospital in the case of severe palpitations is not documented in the medical record. (Tr. 40-41) The absence of objective medical basis to support Plaintiff's subjective descriptions is an important factor the ALJ should consider when evaluating those complaints. Renstrom v. Astrue, 680 F.3d 1057, 1065 (8th Cir. 2012); Barrett, 38 F.3d at 1022 (the ALJ was entitled to find that the absence of an objective medical basis to support claimant's subjective complaints was an important factor in evaluating the credibility of her testimony and of her complaints).[7]

Next, the ALJ noted that no treating or examining source ever indicated that Plaintiff was disabled or unable to work or imposed functional limitations on Plaintiff's capacity for work. See Young v. Apfel, 221 F.3d 1065, 1069 (8th Cir. 2000) (significant that no examining physician submitted medical conclusion that claimant is disabled or unable to work); Edwards v. Secretary of Health & Human Servs., 809 F.2d 506, 508 (8th Cir. 1987) (examining physician's failure to find disability a factor in discrediting subjective complaints). Plaintiff's only treating source never placed any meaningful restrictions on Plaintiff. To the contrary, Dr. Dodson encouraged Plaintiff to be more physically active.

Finally, the ALJ noted that Plaintiff was treated effectively with hydration and medications, and such treatment had controlled Plaintiff's gastrointestinal impairments. See Estes v. Barnhart, 275 F.3d 722, 725 (8th Cir. 2002) ("An impairment which can be controlled by treatment or medication is not considered disabling."); see Davidson v. Astrue, 578 F.3d 838, 846 (8th Cir. 2009) ("Impairments that are controllable or amenable to treatment do not support a finding of disability."); Schultz v. Astrue, 479 F.3d 979, 983 (8th Cir. 2007) (noting that if impairment can be controlled by treatment, it cannot be considered disabling) .

---

[7] Plaintiff claims this case falls within the narrow window of error outlined in Halpin v. Shalala, 999 F.2d 342 (8th Cir. 1993). The ALJ did not simply rely on an absence of objective medical evidence to support Plaintiff's claims. The ALJ also considered the inconsistencies between her subjective complaints and the treatment records.

Although the observations of third-parties may support a Plaintiff's credibility, the letters provided by the third parties in this case generally echoed and corroborated the hearing testimony of Plaintiff regarding her alleged symptoms and their effects. The ALJ may discount corroborating testimony on the same basis used to discredit a plaintiff s testimony. In <u>Buckner v. Astrue</u>, 646 F.3d 549, 559-60 (8th Cir. 2011), the Eighth Circuit held that an ALJ's failure to specifically address supporting claims by the claimant's girlfriend about his condition when those statements could be discredited for the same reason as had the claimant's statements was not error. Indeed in her brief, Plaintiff concedes that the statements made by the third parties in the letters corroborated her impairments. To the extent the third-party letters echoed Plaintiff's subjective allegations regarding her limitations, the same evidence to which the ALJ referred in discrediting Plaintiff would apply to the ALJ discrediting these third parties. <u>See</u> <u>Robinson v. Sullivan</u>, 956 F.2d 836, 841 (8th Cir. 1992) (declining to remand case in which ALJ failed to list reasons for discrediting third party's statement when omission had no bearing on outcome). For these reasons and the reasons discussed above with respect to the ALJ's evaluation of Plaintiff's own subjective complaints, the ALJ's decision is supported by substantial evidence in the record.

Based on the foregoing, substantial evidence in the record as a whole supports the ALJ's adverse credibility finding in this case. <u>See</u> <u>Gregg</u>, 354 F.3d at 713 (reviewing court should give deference to the ALJ's credibility determination).

## B.     The ALJ's Finding Plaintiff's Impairments Not Severe

Plaintiff contends that the ALJ committed reversible error when the ALJ found none of her impairments to be severe at step two of the evaluation process.

The ALJ found Plaintiff had the medically determinable impairments of diabetes, degenerative disc disease, and obesity, and concluded that the impairments, alone or in combination, are not of listing level. At step two of the sequential evaluation, the ALJ

determined Plaintiff's impairments not to be severe, finding that there was no evidence that her symptoms and limitations were of sufficient severity to prevent the performance of all sustained work activity.

"An impairment ... is not severe if it does not significantly limit [the claimant's] physical or mental ability to do basic work activities." 20 C.F.R. § 416.921(a). Basic work activities "mean the abilities and aptitudes necessary to do most jobs," including physical functions; capacities for seeing, hearing, and speaking; understanding, carrying out, and remembering simple instructions; use of judgment; responding appropriately to supervision, co-workers and usual work situations; and dealing with changes in a routine work setting. 20 C.F.R. § 416.921(b). The burden of showing a severe impairment at step two of the sequential evaluation rests with the claimant, and the burden is not great. Caviness v. Massanari, 250 F.3d 603, 605 (8th Cir. 2001); see also Gilbert v. Apfel, 175 F.3d 602, 604-05 (8th Cir. 1999) (court to apply "cautious standard" at step 2 of evaluation process). "While '[s]everity is not an onerous requirement for the claimant to meet, but is also is not a toothless standard.'" Wright v. Colvin, 789 F.3d 847, 855 (8th Cir. 2015) (quoting Kirby v. Astrue, 500 F.3d 705, 708 (8th Cir. 2007)).

A review of the record shows that the ALJ found Plaintiff's impairments did not significantly limit her ability to perform basic work-related activities and, therefore, the ALJ determined that Plaintiff did not have any severe impairments. Brown v. Bowen, 827 F.2d 311, 312 (8th Cir. 1987) ("'[O]nly those claimants with slight abnormalities that do not significantly limit any 'basic work activity' can be denied benefits without undertaking 'the subsequent steps of the sequential evaluation process.'") (quoting Bowen, 482 U.S. at 158). In light of the evidence set out above, the Commissioner's determination at step two of the evaluation process that Plaintiff has failed to meet her burden of establishing that her impairments constitute severe impairments is supported by substantial evidence of the record as a whole.

The ALJ found that "the only medically determinable impairments that are established by the medical records prior to the date of last insured were polycystic ovarian syndrome, alleged right hip pain and some gastrointestinal symptoms to include cramping and diarrhea. The claimant was given no restrictions and was treated effectively with hydrations and medications." (Tr. 15)  Accordingly, the ALJ denied Plaintiff benefits at step two, finding that Plaintiff's impairments "did not significantly limit[] her ability to perform basic work activities is supported by the medical evidence of record." (Tr. 16)

Plaintiff focuses primarily on two specific areas of impairment - obesity and migraine headaches. The Court will address each of these areas. The Court will also address Plaintiff's contention that the ALJ failed in his burden to develop the record in this matter.

### 1.    Obesity

Obesity is considered severe "when alone or in combination with another medically determinable physical or mental impairment(s), it significantly limits an individual's physical or mental ability to do basic work activities."  S.S.R. 02- lp, 2000 WL 628049, *4 (S.S.A. Sept. 12, 2002).  "There is no specific level of weight or [Body Mass Index] that equates with a 'severe' or a 'not severe' impairment."  Id.  The regulations provide that:

> [o]besity is a medically determinable impairment that is often associated with disturbance of the musculoskeletal system, and disturbance of this system can be a major cause of disability in individuals with obesity.  The combined effects of obesity with musculoskeletal impairments can be greater than the effects of each of the impairments considered separately.  Therefore, when determining whether an individual with obesity has a listing-level impairment or combination of impairments, and when assessing a claim at other steps of the sequential evaluation process, including when assessing an individual's residual functional capacity, adjudicators must consider any additional and cumulative effects of obesity.

20 C.F.R. Pt.404, Subpart P, Appx. 1, §1.00(Q).

There is no evidence that Plaintiff's obesity was a severe impairment affecting her ability

to work during the relevant time frame. When examined by Dr. Dodson, Plaintiff's weight ranged from 246 to 269 pounds, and Dr. Dodson diagnosed her with morbid obesity. Plaintiff did not testify at the hearing that her obesity limited her ability to function in any manner. In fact, Plaintiff failed to list obesity as an impairment in her application. See, e.g., Dunahoo v. Apfel, 241 F.3d 1033, 1039 (8th Cir. 2001) (failure to allege disabling mental impairment in application is significant, even if evidence of depression was later developed). Beyond finding Plaintiff to be obese, Dr. Dodson imposed no functional limitations but instead, he encouraged Plaintiff to diet and exercise.

At the hearing, Plaintiff did not testify that her obesity affects her ability to function or limits her ability to work, only that her weight fluctuates, and Plaintiff never alleged any limitation in function as result of her obesity. See Kirby v. Astrue, 500 F.3d 705, 707-09 (8th Cir. 2007) (impairment is not severe if it is only slight abnormality that would not significantly limit mental ability to do basic work activities; claimant bears the burden of establishing impairment's severity). Indeed, during treatment on September 18, 2013, Plaintiff reported not having any functional limitations. In a routine follow-up visit four days before her alleged onset date of disability, Plaintiff reported she had been "walking 1.5 miles three times per week with a friend" and "walking like crazy."

The fact that Plaintiff herself did not report her obesity as a severe impairment in her application cannot be overlooked. In this case, the ALJ found Plaintiff's obesity to be a non-severe impairment. Substantial evidence in the record as a whole supports the ALJ's determination in this regard.

### 2. Migraine Headaches

The ALJ expressly considered Plaintiff s testimony regarding her migraine headaches and found the evidence showed that her migraine headaches did not worsen until after the expiration

of Plaintiff's insured status on June 30, 2007.  (Tr. 15)

A review of the treatment record during the relevant time showed after Plaintiff reported increased frequency of headaches on May 11, 2005, and Dr. Dodson prescribed Topamax.  In follow-up treatment on June 8, 2005, Plaintiff reported "a significant decrease in the frequency and intensity of her headaches and [was] very pleased with this med[ication]," and Dr. Dodson noted that Plaintiff's migraine headaches had a good response on Topamax and increased her dosage.  (Tr. 249)  During treatment on June 20, October 17, and December 19, 2006, Plaintiff did not complain of migraine headaches, and Dr. Dodson found her migraine headaches to be stable on June 20, 2006.  (Tr. 245-47)

The objective medical record for the relevant time period shows therefore that Plaintiff's migraine headaches were controlled through treatment and stabilized by medications.  Schultz v. Astrue, 479 F.3d 979, 983 (8th Cir. 2007) (noting that if impairment can be controlled by treatment, it cannot be considered disabling); Estes v. Barnhart, 275 F.3d 722, 725 (8th Cir. 2002) (an impairment controlled by medication or treatment is not considered disabling).  See also Martise, 641 F.3d. at 923-24 ( finding claimant's condition of migraine headaches did not constitute a severe impairment where the record was "void of any diagnostic testing"; there was no medical evidence that the impairment worsened; and the claimant's impairment "responded to medication.").

Based on the medical evidence from the relevant time period, the record supports the ALJ's conclusion that Plaintiff did not have a medically severe impairment as a result of migraine headaches.  The only medical evidence during the relevant time period, Dr. Dodson's treatment notes, shows that Plaintiff's migraine headaches improved after treatment and starting a medication regimen of Topamax.  Thus, it was proper for the ALJ to find Plaintiff's impairment to be controllable or amenable to treatment and thus do not support a finding of total disability.

See Schultz, 479 F.3d at 983 (noting that if impairment can be controlled by treatment, it cannot be considered disabling); see also Brown v. Barnhart, 390 F.3d 535, 540 (8th Cir. 2004) ("If an impairment can be controlled by treatment or medication, it cannot be considered disabling.").

There is no objective medical evidence suggesting that Plaintiff's impairments or a combination of the impairments are significant enough to cause a disability precluding the performance of any substantial gainful activity. The record supports the determination of the ALJ that Plaintiff is capable of engaging in substantial gainful activity. The substantial evidence on the record as a whole supports the ALJ's decision.

### 3. Failure to Develop the Record

Plaintiff also contends the ALJ failed to fully and fairly develop the record. Plaintiff argues that the ALJ should have solicited a medical opinion evaluating the severity and limiting effects of her impairments. As explained below, the lack of a medical opinion evaluating the severity and limiting effects of Plaintiff's impairments does not, in this case, necessitate a finding that the ALJ failed to properly develop the record.

Although it is an ALJ's duty to develop the record; it is the plaintiff's responsibility to provide medical evidence to show that she is disabled. See 20 C.F.R. §§ 404.1512, 416.912. "Ultimately, the claimant bears the burden of proving disability and providing medical evidence as to the existence and severity of an impairment." Kamann v. Colvin, 721 F.3d 945, 950 (8th Cir. 2013) (emphasis added). Plaintiff failed to do so for the period on or before June 30, 2007. The ALJ is required to order a consultative examination only if the medical records do not provide sufficient medical evidence to determine whether the claimant is disabled. 20 C.F.R. §§ 404.1519a(b), 416,919a(b). The ALJ here was able to make a determination based on the evidence provided.

In the instant case, there was sufficient medical evidence for the ALJ to determine

whether Plaintiff is disabled and therefore no need for the ALJ to further develop the record. See, e.g., Martise, 641 F.3d at 927 (noting that "a lack of medical evidence to support a doctor's opinion does not equate to underdevelopment of the record as to a claimant's disability"). The medical records evidenced improvement with conservative treatment. The record provides a sufficient basis for the ALJ's decision, and he was not required to further develop the record.

**VII.** **Conclusion**

Although the record may very well show that Plaintiff's condition deteriorated after her date of last insured, June 30, 2007, the relevant time period at issue in this case is quite narrow— November 8, 2005 , through June 30, 2007. Thus, Plaintiff did not satisfy her burden of proof before the Commissioner.

The undersigned concludes that the ALJ's decision is supported by substantial evidence on the record as a whole. An ALJ's decision is not to be disturbed "'so long as the ... decision falls within the available zone of choice. An ALJ's decision is not outside the zone of choice simply because [the Court] might have reached a different conclusion had [the Court] been the initial finder of fact.'" Buckner v. Astrue, 646 F.3d 549, 556 (8th Cir. 2011) (quoting Bradley v. Astrue, 528 F.3d 1113, 1115 (8th Cir. 2008)). Although Plaintiff articulates why a different conclusion might have been reached, the ALJ's decision (and therefore the Commissioner's decision) was within the zone of choice and should not be reversed for the reasons set forth in this Memorandum and Order. The decision of the ALJ denying Plaintiff's claims for benefits should be affirmed.

Accordingly,

**IT IS HEREBY ORDERED** that the decision of the Acting Commissioner be

**AFFIRMED**.  A separate Judgment in accordance with this Memorandum and Order is entered

this same date.

<div style="margin-left: 50%;">

/s/ John M. Bodenhausen
JOHN M. BODENHAUSEN
UNITED STATES MAGISTRATE JUDGE

</div>

Dated this <u>5th</u> day of <u>August</u>, 2016.